IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM CAREY,               :
                 Plaintiff    :
    v.                        :
                              :
NATIONAL EVENT SERVICES, INC. :    CIVIL ACTION
                              :
    and                       :    NO:  2-14-cv-05006-MMB
                              :
PHILADELPHIA EAGLES, LLC      :
                              :
    and                       :
                              :
EAGLES STADIUM OPERATOR, LLC  :

**MOTION OF DEFENDANTS, PHILADELPHIA EAGLES, LLC
AND EAGLES STADIUM OPERATOR, LLC TO DISMISS COUNT VI OF
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 12(B)(1) AND 12(B)(6)**

Defendants Philadelphia Eagles, LLC and Eagles Stadium Operation, LLC (hereinafter

collectively referred to as "Eagles" or "the Eagles"), by and through their counsel Ricci Tyrrell

Johnson & Grey, hereby move this Honorable Court for an Order dismissing Count VI of

Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).

    1.    Philadelphia Eagles, LLC and Eagles Stadium Operator, LLC are named in a

single Count, Count VI, of the First Amended Complaint.

    2.    Eagles move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of

subject matter jurisdiction and, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief may be granted.  A copy of the First Amended

Complaint is attached as Exhibit "1".

{1360.00050:00132019 }                    1

3.      The First Amended Complaint was filed on October 15, 2014, has been filed in response to Rule 12 motions to dismiss Plaintiff's initial pleading, and has added Eagles Stadium Operator, LLC as a Defendant; therefore, this motion is timely filed.

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIM IN COUNT VI

4.      It is the Plaintiff's burden to prove jurisdiction.

### FEDERAL QUESTION JURISDICTION

5.      No federal question claim has been pleaded against the Eagles to confer jurisdiction under 28 U.S.C. §1331.

### FEDERAL DIVERSITY JURISDICTION

6.      Plaintiff has not pleaded facts to establish the citizenship of each Eagles Defendant beyond stating, accurately, that each is a Pennsylvania limited liability company.

7.      Diversity jurisdiction is not available under 28 U.S.C. §1332 for Plaintiff's claims against the Eagles.

8.      Plaintiff does not even allege in the First Amended Complaint that diversity of citizenship exists between the Eagles Defendants and Plaintiff.

### SUPPLEMENTAL JURISDICTION

9.      Supplemental jurisdiction under 28 U.S.C. §1367 over Count VI is not available because Count VI is not pendent to any federal question claim alleged in Counts I and II.

10.     Plaintiff alleges federal question jurisdiction exclusively for Counts I and II which have been pleaded against his former employer, Co-Defendant National Event Services ("NES").

11.     Counts I and II allege NES consistently failed to pay Mr. Carey as mandated by federal statutory law, under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, et. seq., for hours worked in excess of forty hours.

12.     Counts I and II are not factually related to and as pleaded are patently distinct and independent of Mr. Carey's tortious interference with employment claim against the Eagles in Count VI.

13.     No facts are pleaded by Mr. Carey that explicitly or by reasonable inference charge the Eagles with responsibility for or involvement in the alleged violations by NES of the FLSA.

14.     Supplemental jurisdiction over Count VI under 28 U.S.C. §1367 is also lacking because jurisdiction over Count VI cannot be had by virtue of any diversity jurisdiction analysis.

15.     As stated above, Plaintiff has neither pled nor demonstrated that diversity of citizenship exists between Plaintiff and the Eagles Defendants.

16.     Diversity jurisdiction under 28 U.S.C. §1332 requires complete diversity between all plaintiffs and all defendants.

17.     Even assuming jurisdiction could be accepted over Count VI because only Plaintiff and NES are diverse, without complete diversity, diversity of citizenship does not exist between Plaintiff and NES.

18.     Although Plaintiff avers that NES is a New Hampshire corporation with its principal place of business in California, in fact, Annual Reports for 2013 and 2014 that are readily available as public records from the Secretary of State of New Hampshire declare NES' principal place of business to be in Yeadon, Delaware County, Pennsylvania.  Copies of the reports, as well as other corporate filings of NES in both Pennsylvania and New Hampshire are attached as Exhibit "2".

19.     Plaintiff and NES are both citizens of Pennsylvania; therefore, diversity of citizenship required by 28 U.S.C. §1332 will not lie as to Counts III through V of the First Amended Complaint.

20.     Count VI cannot be a pendent claim to Counts III through V absent federal diversity jurisdiction over Counts III through V.

## TORTIOUS INTERFENCE WITH AN EXISTING EMPLOYMENT RELATIONSHIP IS NOT A COGNIZABLE CLAIM UNDER PENNSYLVANIA LAW

21.     Even assuming subject matter jurisdiction, Plaintiff's claim in Count VI alleging tortious interference with his existing, at-will employment by NES is not a cause of action in Pennsylvania; the theory has been twice rejected by the Superior Court of Pennsylvania as a legally cognizable claim.

22.     The charge of intent by the Eagles to force Plaintiff's termination from employment by NES is not factually supported even by the allegations of the First Amended Complaint.

23.     Plaintiff's attempt to have this court recognize a novel theory of tort liability under Pennsylvania law is also sufficient reason under 28 U.S.C. §1367(c)(1) to refuse the exercise of discretionary supplemental jurisdiction.

## CONCLUSION

24.     The Eagles offer the Exhibits attached hereto, and rely upon and incorporate their Brief filed in support of this Motion.

WHEREFORE, the Eagles move for dismissal of Count VI of the First Amended Complaint and their dismissal with prejudice as Defendants. Forms of proposed alternate Orders have been submitted.

Respectfully submitted,

**RICCI TYRRELL JOHNSON & GREY**

BY: _____

John E. Tyrrell, Esquire I.D. #56618
Francis P. Burns, III, Esquire, I.D. #27537
1515 Market Street, Suite 700
Philadelphia, PA  19102
(215) 320-3260
Attorneys for Defendants,
Philadelphia Eagles, LLC and
Eagles Stadium Operator, LLC
jtyrrell@rtjglaw.com
fburns@rtjglaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM CAREY | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| NATIONAL EVENT SERVICES, INC. | : | CIVIL ACTION |
| | : | |
| and | : | |
| | : | NO.  2:14-cv-05006-MMB |
| PHILADELPHIA EAGLES, LLC | : | |
| | : | |
| and | : | |
| | : | |
| EAGLES STADIUM OPERATOR, LLC | : | |
| | : | |
| Defendants | : | |

**BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS PHILADELPHIA EAGLES, LLC AND EAGLES STADIUM OPERATOR, LLC TO DISMISS COUNT VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

Defendants Philadelphia Eagles, LLC and Eagles Stadium Operator, LLC (hereinafter collectively referred to as "Eagles" or "the "Eagles") submit the within Brief in Support of their Motion to Dismiss Count VI of Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.      ISSUE BEFORE THE COURT:**

The Eagles' Motion to Dismiss Count VI of Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**II.     QUESTIONS PRESENTED:**

A.      Should this Court dismiss Count VI of Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction?

*Suggested Answer:    Yes.*

B.      Alternatively, should this Court dismiss Count VI of Plaintiff's First Amended Complaint alleging Tortious Interference With Existing Employment Relationship where Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)?

*Suggested Answer:*   **Yes.**

III.    **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

        **A. PROCEDURAL HISTORY**

On August 27, 2014, Plaintiff William Carey (hereinafter "Plaintiff") filed a Complaint against National Event Services, Inc. (hereinafter "NES") and Philadelphia Eagles, LLC.[1]  A true and correct copy of the original Complaint is attached as Exhibit "3".  Defendant Philadelphia Eagles, LLC was served on September 9, 2014.  Plaintiff asserted federal question jurisdiction claims against NES pursuant to The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; other claims against NES; and state tort law claims against the Philadelphia Eagles, LLC. *Exhibit "3" at ¶ 2.*  Plaintiff alleged that this court has jurisdiction over his federal claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. §§ 207(a) and 216 (b), and over his state law claims pursuant to the doctrine of supplemental (pendent) jurisdiction codified at 28 U.S.C. § 1367.  *See Exhibit "3" at ¶ 3.*

On September 25, 2014, Philadelphia Eagles, LLC filed a Motion to Dismiss Count VI of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Defendant NES also moved to dismiss Plaintiff's original Complaint.  Plaintiff then filed a First Amended Complaint on October 15, 2014 against NES and Philadelphia Eagles, LLC, and added Eagles Stadium Operator, LLC as a defendant.  A true and correct copy of Plaintiff's First

---

[1] Plaintiff's initial pleading titled itself an "Amended Complaint."  It is unknown why plaintiff characterized the initial Complaint as "Amended."

Amended Complaint is attached hereto and marked as Exhibit "1."  In his First Amended Complaint, Plaintiff retains claims as first alleged, but adds that this Court has both federal question jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. §§ 207(a) and 216(b), and diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a) for his claims against NES and supplemental jurisdiction under 28 U.S.C. § 1367 for his claims against the Eagles. *See Exhibit "1" at ¶¶ 3 through 8.*

### B.  PLAINTIFF'S AVERMENTS IN THE FIRST AMENDED COMPLAINT

At the time of the actions that gave rise to the filing of his Amended Complaint, plaintiff was an employee of NES, working as a full-time emergency medical services ("EMS") manager. *See Exhibit "1" at ¶ 29.*  His duties included "(i) orienting new hires; (ii) creating a schedule for all EMTs employed by NES; (iii) tracking EMT certifications; and (iv) processing employee payroll, as well as client bills and bidding…" *See Exhibit "1" at ¶ 32.*  Plaintiff further alleges that "during nights and weekends, [he] was often required to work various venues (such as Lincoln Financial Field) as an EMS Manager; these hours far exceeded [his] normal forty (40) hour workweek." *See Exhibit "1" at ¶ 43.*

By plaintiff's own admission, at all times relevant to this cause of action, he was an at-will employee of NES. *See Exhibit "1" at ¶ 226.*  Plaintiff alleges that NES was contracted by the Eagles to provide such emergency medical services at Lincoln Financial Field at a playoff game on January 4, 2014, and plaintiff himself served as the on-site EMS manager for that game. *See Exhibit "1" at ¶¶ 51, 54.*  Plaintiff also alleges that the Eagles also contracted with the Philadelphia Police Department, Apex Group, and Contemporary Services Corporation to provide security at Lincoln Financial Field for the January 4, 2014 playoff game. *See Exhibit "1" at ¶¶ 57, 58, 59.*  According to plaintiff, he was approached by one or more of these

security personnel prior to the start of the playoff game, who "demanded that [plaintiff] classify all 'drunk' patrons as 'intoxicated' medical patients and, thus, transport these individuals to an area hospital via ambulance." *See Exhibit "1" at ¶ 61.* Plaintiff characterizes this demand as a direct violation of the law and of public policy and Department of Health protocols, in that it could endanger the safety of more than 60,000 people attending the playoff game by wasting the already limited number of ambulances and amount of medical supplies. *See Exhibit "1" at ¶ 63, 64, 71, 72, 74, 100, 155, 157, 160, 191, 192, 193, 246, 252.* Plaintiff further alleges in his First Amended Complaint that classifying drunk patrons as intoxicated and transporting them to area hospitals via ambulance is tantamount to kidnapping and false imprisonment, and would have exposed NES to criminal penalties and civil liability. *See Exhibit "1" at ¶¶ 65, 66, 67, 160, 189, 190, 192.*

Plaintiff avers he told the personnel from "Eagles Security" that he "lacked the authority to make such a broad discretionary decision regarding patient care." *See Exhibit "1" at ¶ 69.* Plaintiff alleges that an on-site physician, Dr. Lavelle, "reinforced [plaintiff's] objections by notifying Eagles Security that he was unwilling to waste the scarce resources available and overload hospitals with 'drunk' patrons (who should not be classified as medical patients)." *See Exhibit "1" at ¶ 77.* Plaintiff alleges that both Dr. Lavelle and plaintiff refused to "authorize the use of ambulances to transport 'drunk' patrons..." *See Exhibit "1" at ¶ 81.* Plaintiff alleges that, following this interaction with Eagles Security, the security personnel "were disgruntled and voiced their displeasure." *See Exhibit "1" at ¶ 86.*

Plaintiff alleges that NES did not mention the exchange with "Eagles Security" until he was summoned to the office of Daniel Monzo (hereinafter "D. Monzo"), Chief Operating Officer of NES, on March 11, 2014. *See Exhibit "1" at ¶¶ 88, 89.* Plaintiff avers that he was

informed that Carl Monzo (hereinafter "C. Monzo"), D. Monzo's brother and NES President, had received an e-mail from the Eagles in February 2014 mandating that plaintiff not return to Lincoln Financial Field for any future events. *See Exhibit "1" at ¶ 92.* Plaintiff alleges that, according to C. Monzo, the Eagles were displeased with his performance at the January 4, 2014 game and found him to be "uncooperative." *See Exhibit "1" at ¶¶ 93, 96.* Plaintiff allegedly was then told by D. Monzo that he was either to resign from NES or be terminated with cause. *See Exhibit "1" at ¶ 97* Plaintiff alleges he refused to resign and was immediately terminated "for his refusal to acquiesce to the demands of Eagles Security and Philadelphia Police…" *See Exhibit "1" at ¶ 99, 100.*

Plaintiff's First Amended Complaint sets forth five counts against NES for (1) Failure to Pay Overtime and (2) Retaliation, both pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; (3) Retaliation pursuant to The Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq.*; (4) Wrongful termination; and (5) Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*; and one count (Count VI) against the Eagles for Tortious Interference with Existing Employment Relationship.

The First Amended Complaint does not plead facts to establish the citizenship of each Eagles Defendant beyond stating, accurately, that each is a Pennsylvania limited liability company. Plaintiff does not even allege in the Amended Complaint that diversity of citizenship exists between the Eagles Defendants and Plaintiff. Plaintiff alleges federal question jurisdiction exclusively for Counts I and II which have been pleaded against NES. Plaintiff also avers that diversity of citizenship exists between he and NES. Plaintiff alleges that he is a Pennsylvania citizen and NES is a New Hampshire corporation with its principal place of business in California. *Exhibit "1" at ¶¶ 3-8; 16-23.*

## IV.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a plaintiff's complaint

for lack of subject matter jurisdiction.  The grant of supplemental jurisdiction is codified at 28

U.S.C. §§1367(a) which provides in pertinent part as follows:

> Except as provided in subsections (b) and (c) or as expressly
> provided otherwise by Federal statute, in any civil action of which
> the district courts have original jurisdiction, the district courts shall
> have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that
> they form part of the same case or controversy under Article III of
> the United States Constitution.  Such supplemental jurisdiction
> shall include claims that involve the joinder or intervention of
> additional parties.

However, it is clear that the exercise of supplemental jurisdiction is discretionary as 28

U.S.C. 1367(c) provides:

> The district courts may decline to exercise supplemental
> jurisdiction over a claim under section (a) if—
>
> (1)     the claim raises a novel or complex issue of State law;
>
> (2)     the claim substantially predominates over the claim or
> claims over which the district court has original jurisdiction;
>
> (3)     the district court has dismissed all claims over which it has
> original jurisdiction, or
>
> (4)     in exceptional circumstances, there are other compelling
> reasons for declining jurisdiction.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a claim upon

which relief cannot be granted as a matter of law.  Rule 12(b)(6) provides as follows:

> (b) How Presented. Every defense, in law or fact, to a claim for
> relief in any pleading, whether a claim, counterclaim, cross-claim,
> or third-party claim, shall be asserted in the responsive pleading
> thereto if one is required, except that the following defenses may at
> the option of the pleader be made by motion:... (6) failure to state
> a claim upon which relief can be granted...

In *Eagle v. Morgan*, 2011 U.S. Dist. LEXIS 147247, 10-13 (E.D. Pa. Dec. 22, 2011), this

Court set forth the standard for determinations under 12(b)(6):

> Under Rule 12(b)(6), a Defendant bears the burden of demonstrating that the
> Plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P.
> 12(b)(6); see also *Hedges v. United States*, 404 F.3d 744, (3d Cir. 2005).  In *Bell
> Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007),
> the United States Supreme Court recognized that "a Plaintiff's obligation to
> provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action will
> not do." *Id.* at 555.  Following these basic dictates, the Supreme Court, in
> *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009),
> subsequently defined a two-pronged approach to a court's review of a motion to
> dismiss.  "First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals
> of the elements of a cause of action, supported by mere conclusory statements, do
> not suffice." *Id.*, 129 S. Ct. at 1949.  Thus, although "Rule 8 marks a notable and
> generous departure from the hyper-technical, code-pleading regime of a prior
> era…it does not unlock the doors of discovery for a Plaintiff armed with nothing
> more than conclusions." *Id.* at 1950.  Second, the Supreme Court emphasized that
> "only a complaint that states a plausible claim for relief survives a motion to
> dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief
> will, as the Court of Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense." *Id.*  A
> complaint alleges, but does not show, an entitlement to relief when the well-
> pleaded facts do not permit the court to infer more than the mere possibility of
> misconduct. *Id.*; see also *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d
> Cir. 2008)(holding that: (1) factual allegations of complaint must provide notice
> of Defendant; (2) complaint must allege facts suggestive of the proscribed
> conduct; and (3) the complaint's "'factual allegations must be enough to raise a
> right to relief above the speculative level.'" (*quoting Twombly*, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of

review have remained static.  *Id.(citing Spence v. Brownsville Area Sch. Dist.*, No. Civ.A.08-626,

2008 U.S. Dist. LEXIS 55026, 2008 WL 2779079 at *2 (W.D. Pa. July 15, 2008)).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant to a

complaint may move to dismiss for failure to state a claim upon which relief can be granted as a

matter of law.  *See, e.g., Brawner v. Educ. Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 104863, at *40

(E.D. Pa. July 27, 2012).  When considering a motion to dismiss under Rule 12(b)(6), a

plaintiff's complaint should be dismissed if it appears that he cannot prove any set of facts in support of his claims which would entitle him to relief. *Rolax v. Whitman*, 175 F. Supp. 2d 720 (D.N.J. 2001); *Mruz v. Caring, Inc.*, 39 F. Supp. 2d 495, 500 (D.N.J. 1999) (Orlofsky, J.), *rev'd on other grounds* (*citing Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Rolax*, 175 F. Supp. 2d at 726 (*citing Mruz*, 39 F. Supp. 2d at 500) (*citing Gomez v. Toledo*, 446 U.S. 635, 636 (1980)); *Schrob v. Catterson*, 948 F.2d 1402 (3d Cir. 1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) allows a court to dismiss a claim on the basis of a dispositive issue of law. *Rolax*, 175 F. Supp. 2d at 726 (*citing Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (noting that this "streamlines litigation by dispensing with needless discovery and fact-finding").

## V.   ARGUMENT

### A.   SUMMARY OF ARGUMENT

This Court lacks subject matter jurisdiction over Count VI of the First Amended Complaint. Count VI should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and since Count VI is the only count stated against the Eagles Defendants, Philadelphia Eagles, LLC and Eagles Stadium Operator, LLC should be dismissed as defendants from this action, with prejudice.

Plaintiff alleges neither federal question jurisdiction nor diversity jurisdiction for his claims against the Eagles defendants. No federal law claim has been pleaded against the Eagles

to confer jurisdiction under 28 U.S.C. §1331.  Further, Plaintiff has not, and can not, allege

diversity citizenship under 28 U.S.C. §1332 between Plaintiff and the Eagles Defendants.

Plaintiff does allege supplemental jurisdiction over Count VI under 28 U.S.C. §1367,

however, Plaintiff has clearly failed to meet his burden to show that such jurisdiction exists and

should be accepted by the Court.  First, Plaintiffs' only federal question jurisdiction claims are

those set forth in Counts I and II for violations of the Fair Labor Standards Act (FLSA) against

Defendant NES.  Supplemental jurisdiction is not conferred, however, as Plaintiffs' claims in

Count VI against the Eagles, and in Counts I and II against NES, clearly do not derive from a

common nucleus of operative fact and if considered without regard to their federal or state

character, Plaintiff's claims are not such that he would ordinarily be expected to try them in one

judicial proceeding.

Further, Plaintiff does not have diversity jurisdiction over **any** of his claims, and

therefore, supplemental jurisdiction is not possible over the Count VI claims against the Eagles

under **any** diversity analysis.  Diversity of Citizenship under 28 U.S.C. §1332 requires complete

diversity between all plaintiffs and all defendants.  Plaintiff has not and can not contend that

diversity exists between he and the Eagles Defendants.  Further, while Plaintiff alleges NES is a

New Hampshire Corporation with its principal place of business in California, official reports

filed by NES demonstrate its principal place of business is in Yeadon, PA (See Exhibit "2").

Plaintiff has clearly failed in his burden to demonstrate jurisdiction over Count VI under any

analysis.  Further, Plaintiff's attempt to have this Court recognize a novel theory of tort liability

under Pennsylvania law is also sufficient reason under 28 U.S.C. §1367(c)(1) to refuse the

exercise of discretionary supplemental jurisdiction.

Alternatively, and even assuming subject matter jurisdiction, Count VI of the First Amended Complaint should be dismissed, and the Eagles Defendants dismissed from the action, as Plaintiff's claims in Count VI alleging tortious interference with an existing, at-will employment relationship fail to state a claim upon which relief can be granted as the alleged cause of action is not cognizable in Pennsylvania.  Therefore, the Eagles' Motion to Dismiss should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B.      COUNT VI OF PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R.C.P. 12(B)(1) BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION**

This court lacks subject-matter jurisdiction over Count VI of the Complaint and Count VI must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

There is no federal question claim pleaded against the Eagles and Plaintiff does not even allege that diversity of citizenship exists between he and the Eagles Defendants.  Supplemental jurisdiction cannot apply for multiple reasons.  First, plaintiff's federal question claims against NES are for violation of the FLSA – a matter patently unrelated to the tortious interference with employment alleged in Count VI. Conversely, the Eagles are not alleged to have had any part in the controversy whether the FLSA was violated by NES.  Second, Count VI cannot be "pendent" to plaintiff's Counts against NES that are alleged to be reliant on diversity jurisdiction because, like plaintiff, NES is a citizen of Pennsylvania.[2] Diversity jurisdiction is simply absent. Finally, even if one were to assume Count VI states a cognizable claim under Pennsylvania law, a proposition the Eagles have challenged separately under Rule 12(b)(6), the theory advanced invites this court to engage in an analysis it should decline by exercise of its discretion under 28 U.S.C. §1367(c)(1).

---

[2] Plaintiff's Count V alleging a state wage law violation is also disqualified as a linked claim because, like its federal counterparts, it has nothing to do with the Eagles alleged interference with his employment.

1.    **Federal Question Jurisdiction has not been pleaded as to Count VI**

The only federal law allegedly violated is the Fair Labor Standards Acts (FLSA). The only defendant alleged to have violated the FLSA is NES. There is no federal question jurisdiction over Count VI under 28 U.S.C. §1331.

2.    **Federal Diversity Jurisdiction has not been pleaded as to Count VI**

Plaintiff has alleged, accurately, only that Philadelphia Eagles, LLC and Eagles Stadium Operator, LLC are Pennsylvania limited liability companies. He has not pleaded sufficient facts to establish diversity jurisdiction.  In fact, Plaintiff does not even allege that diversity of citizenship exists between he and the Eagles Defendants.

3.    **Supplemental Jurisdiction is unavailable**

a.    **Counts I and II are factually unrelated to Count VI**

Counts I and II, and only those counts, attempt to state federal question jurisdiction claims.  Neither is addressed to the Eagles.  Both are factually based on allegations NES violated the federal Fair Labor Standards Act.

To support supplemental jurisdiction as to Count VI by linking it to his federal claims plaintiff must show that the same basic facts support all three counts, all are so related they are part of the same case or controversy, and it makes sense that all claims be adjudicated in a single action. *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995).  The Count VI and Counts I and II claims would have to derive from a common nucleus of operative fact and, if considered without regard to their federal or state character, Plaintiffs' claims must be such that he would ordinarily be expected to try them in one judicial proceeding. *Id.* (claims must satisfy both the "nexus" requirement and the "one proceeding" standard before a district court may exercise supplemental jurisdiction); *Craig v. Salamone*, 1999 U.S. Dist. LEXIS 12412 at *6 (E.D. Pa. Apr. 11, 1999). Plaintiff's First Amended Complaint cannot provide anything near the requisite factual overlap.

Even superficially it is apparent Count VI has nothing to do with the FLSA claims. The Eagles are not mentioned in Count I or II.  The core allegation for Counts I and II is that plaintiff was unlawfully denied payment for overtime work, and complained about it to NES.  The Complaint also makes clear that while Mr. Carey was a full time employee of NES, his work at Lincoln Financial Field events could only have been a fraction of his weekly earnings, and could not have been part of his income every weekend much less every week of a work year.

Getting to the heart of the matter, Plaintiff does not allege the Eagles played any part in NES's decision to refuse payment of  overtime wages.  Plaintiff's claim against the Eagles, and the whole of Count VI, is premised on events alleged to have occurred at one playoff game and one email objecting to Mr. Carey's exchange with security personnel during the game.  In sum, the FLSA claims and the employment interference claim have nothing in common.  The employment interference claim cannot, therefore, be "pendent" to the federal FLSA claims. *See*: *Lyon v. Whisman, supra.* (The court declined to exercise supplemental jurisdiction over state law that tort claims relating to failure to pay an employee a promised bonus in case on which federal question jurisdiction was based on FLSA claims.  The court held that an insufficient factual nexus between the state and federal claims failed to establish a common nucleus of operative facts).

### b.  Counts III through V are not subject to diversity jurisdiction

As an alternative basis for supplemental jurisdiction, Plaintiff pleads a connection between Count VI and his state law claims against NES in Counts III to V.[3] This presupposes those state law claims are supported by federal diversity jurisdiction. That supposition is simply wrong.

---

[3] There can be no common core with Count V, Carey's state wage payment claim, for the same reasons Count VI is unrelated to Counts I and II.

It is the plaintiff's burden to prove diversity of citizenship. *Lee v. Reynolds*, 2014 U.S. Dist. LEXIS 71836, at *5-6. See *also Petruska v. Gannon Univ.*, 462 F.3d 294, 301 n.3 (3d Cir. 2006) (stating that "[n]o presumptive truthfulness attaches to plaintiff's allegations . . . the plaintiff will have the burden of proof that jurisdiction does in fact exist."); *Kissi v. Gillespie*, 348 Fed. Appx. 704, 705-706 (3d Cir. N.J. 2009) (stating that a plaintiff invoking a federal court's diversity jurisdiction bears the burden of stating "all parties' citizenships such that the existence of complete diversity can be confirmed."). A court may dismiss a complaint where the pleading fails to prove complete diversity of citizenship. See, *e.g.*, *Randazzo v. Eagle-Picher Industries, Inc.*, 117 F.R.D. 557 (E.D. Pa. 1987), where the court dismissed that plaintiff's Complaint and Amended Complaint where both pleadings failed to allege the state of incorporation and the principal place of business of the defendant. The court held that the pleadings on their face failed to show complete diversity ("any law school student knows that both the state of incorporation and principal place of business must be diverse") and, as such, was jurisdictionally deficient. *Id.* at 557-558. Complete diversity of citizenship is required under U.S.C. §1332 which mandates that each plaintiff must be a citizen of a different state from each defendant. *Lee*, 2014 U.S. Dist. LEXIS 71836, at *5; *see also Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995; *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1992); *Quaker State Dyeing & Finishing Co. v. ITT TerryPhone Corp.*, 461 F.2d 1140, 1142 (3d Cir. 1972). Plaintiff does not even plead that he is diverse from the Eagles Defendants and therefore complete diversity is lacking on the face of the First Amended Complaint.

Even assuming this Court could have jurisdiction over Counts III through V if Plaintiff and NES alone were diverse, they are not. Plaintiff is a citizen of Pennsylvania. He alleges NES is a New Hampshire corporation, which is confirmed by readily accessible public records. He

also alleges NES has its principal place of business in California but maintains an office in Yeadon, Delaware County, Pennsylvania.  No presumptive truthfulness attaches to plaintiff's allegation; he must plead and prove that jurisdiction exists. *Petruska v. Gannon Univ.*, 462 F.3d 294, 301 n.3 (3d Cir. 2006).

Public records available from Pennsylvania and New Hampshire flatly contradict the allegation that NES has its nerve center in California, and affirmatively declare NES' principal place of business to be in Yeadon, Pennsylvania. See, NES filing histories, Articles of Incorporation and 2013 and 2014 Annual Reports attached as *Exhibit "2"*.  In sum, NES is a corporate citizen of New Hampshire and Pennsylvania, foreclosing access to federal diversity jurisdiction because Mr. Carey is also a Pennsylvania citizen. 28 U.S.C. §1332(c)(1); *Johnson v. SmithKline Beacham Corp.*, 724 F.3d 337 (3d Cir. 2013). It necessarily follows that plaintiff cannot invoke supplemental jurisdiction for his state law claim against the Eagles in Count VI; there is no host federal diversity claim to which Count VI can attach. A district court may not exercise supplemental jurisdiction over a claim when to do so would be inconsistent with the requirements of 28 U.S.C. §1332.  28 U.S.C. §1367(b).

### c.   Count VI does not warrant the exercise of discretionary jurisdiction

Supplemental jurisdiction is in the main discretionary. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995). A district court may decline to exercise jurisdiction if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c). "Needless decisions of state law should be avoided both as a matter of comity

and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." *Borough of West Mifflin, supra.* at 788.

Plaintiff's tortious interference with an existing at-will employment claim has not been recognized as a cause of action in Pennsylvania, and the theory of liability imbedded in Count VI has been twice rejected by the Superior Court of Pennsylvania. (*Infra* at next section of this Brief). In this case, the Eagles have been sued on a variant of the theory rejected. In tacit recognition that his theory of liability in Count VI is not viable, Plaintiff attempts to plead a wholly new cause of action that depends on a similarly novel proposed public policy exception to the rule that he has no claim under Pennsylvania law.  Thus, plaintiff urges this court to recognize a cause of action for tortious interference with at-will employment cobbled together from three propositions: tortious interference with currently existing at-will employment is actionable; if tortious interference with current at-will employment is not actionable then it should be if a public policy exception applies; and protocols issued by the Department of Health embody a public policy from which an exception may be fashioned both to the rule of at-will employment and, by extension, to decisions of the Superior Court refusing to recognize a cause of action for tortious interference with at-will employment. In the next section of this Brief, the Eagles will eviscerate the idea that Count VI states a claim for relief. But even if one were to assume it might state a claim, the novel exercise invited by Count VI is best left to the state courts of Pennsylvania and presents a compelling reason to decline supplemental jurisdiction pursuant to 28 U.S.C. §1367(c).

In *Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478 (3d. Cir. 1998), the court considered a plaintiff's appeal from the district court's dismissal of his action under Fed. R.C.P. 12(b)(6) and the district court's subsequent refusal to exercise supplemental jurisdiction

over his state law claims. *Id.* at 480.  That plaintiff had filed a complaint seeking declaratory and injunctive relief, and had set forth claims that, *inter alia*, defendants violated the Securities and Exchange Act of 1934, 15 U.S.C. § 78(j)(b), Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, and Article IV, § 7, P 2 of the New Jersey Constitution. *Id.* at 482.  The district court dismissed all of the federal claims under Rule 12(b)(6) and also declined to exercise supplemental jurisdiction over the New Jersey constitutional claim. *Id.*  The district court reasoned that "'state courts should be given the opportunity to interpret their state constitutions,' and since 'only the New Jersey Supreme Court can give an authoritative construction of the New Jersey Constitution,' the court exercised its discretion and refused to hear [plaintiff's] state law claims." *Id.* at 483.  On appeal, the Third Circuit affirmed the trial court's decision to, in its discretion, refuse to hear the state law issue.  The Third Circuit agreed with the district court's ruling, holding that the question of whether the New Jersey Constitution was violated "is a complex issue of state law which is better left to the New Jersey courts to determine." *Id.* at 487.

In *Patton v. SEPTA*, 2007 U.S. Dist. LEXIS 5806 (E.D. Pa. Jan. 26, 2007) the court considered defendants' motion to dismiss pursuant to Fed. R.C.P. 12(b)(6) plaintiff's action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1201 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq.; 42 U.S.C. § 1983; the Pennsylvania Human Relations Act, 43 Pa. Pa. Cons. Stat. § 955(a), and Article I of the Pennsylvania Constitution. *Id.* at *1-2.  The issue with Article I of the Pennsylvania Constitution was whether there was a private right of action for money damages for violation of the Constitution. *Id.* at *21.  Defendants cited several cases from district courts in the Third Circuit that have held that the free speech provision set forth in Article I, Section 7 does not establish a private cause of action for money damages.  Id.  Plaintiff responded that a recent Pennsylvania Commonwealth Court decision, *Jones v. City of*

*Philadelphia*, 890 A.2d 1188 (Pa. Commw. Ct. 2006) indicated that defendants had not met their

burden of establishment that Article I, Section 7 does not provide a damage remedy. *Id.* at \*21-

22. The court held that "[b]ecause plaintiff's claims under the Pennsylvania Constitution raise

novel or complex issues of state law, I will decline to exercise supplemental jurisdiction over

those claims." *Id.* at \*22. The court went on to explain:

> Plaintiff would have this Court undertake the extensive analysis of
> Pennsylvania Constitutional law explicated in *Jones*. However,
> this court is inappropriately suited to that task as the availability of
> money damages for violations of the Pennsylvania Constitution is
> unsettled and has not been addressed by the Pennsylvania Supreme
> Court... The application of the principles espoused in Jones to the
> Pennsylvania Constitution provision at issue "raises a novel or
> complex issue of State law," a ground for which the court, in its
> discretion, may decline to exercise jurisdiction. 28 U.S.C.S. §
> 1367(c)(1).

*Id.* at \*23-25.

    The court ruled similarly in *Laughman v. Pennsylvania*, 2006 U.S. Dist. LEXIS 15841

(M.D. Pa. Mar. 17, 2006). In that case, the court considered defendants' motions to dismiss

plaintiff's complaint, brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, the

Pennsylvania Constitution, and multiple state law claims.[4] *Id.* at \*6. The issue under the

Pennsylvania Constitution was similar to that in *Patton v. SEPTA, supra*, regarding whether

monetary damages were appropriate for a violation of the Constitution. *Id.* at \*26. As in *Patton*,

the court held that "[a]s the Pennsylvania Supreme Court has not yet addressed the issue of

whether a plaintiff may seek monetary damages for state constitutional violations, this Court will

decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant

to 28 U.S.C.S. § 1367(c)(1)." *Id.* at \*27. The court reasoned as follows:

---

[4] The state law claims sought by plaintiff included those for alleged malicious prosecution, unlawful incarceration, cruel and usual punishment, fraud, false imprisonment, and conspiracy. *Id.* at \*6.

> Numerous district courts have recognized that the issue of whether an action for monetary damages for violations of the Pennsylvania constitution is a 'novel or complex issue of State law' and accordingly, have declined to exercise supplemental jurisdiction." Id. (citing Mitchell v. Street, 2005 U.S. Dist. LEXIS 17156 at *16-18 (E.D. Pa. Aug. 16, 2005) (dismissing state constitutional claims without prejudice in light of the unclear status of the law); Miller v. Windsor Twp., 2005 U.S. Dist. LEXIS 17433 at *12 (M.D. Pa. Jun. 24, 2005) (stating that there is a dearth of case law on the issue" and declining to exercise jurisdiction over the state constitutional claims because deference to the state appellate courts is appropriate); Mulgrew v. Fumo, 2004 U.S. Dist. LEXIS 14654 at *7-8 (E.D. Pa. Jul 29, 2004) ("Due to this unsettled issue of law, as to whether such a direct right of action exists [for money damages for violations of the state constitution], we believe a state court is better equipped to determine the causes of action that may be derived from the Pennsylvania Constitution"); see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court's decision to refrain from exercising supplemental jurisdiction over state constitutional claims that presented a complex issue of state law).

Id. at *27-28. See also June v. Spano, 2005 U.S. Dist. LEXIS 25681, at *13 (E.D. Pa. Oct. 27, 2005) ("[T]his Court declines to exercise supplemental jurisdiction over Plaintiffs' claim to recover damages for Defendants' alleged violation of Article I, Section 8 [of the Pennsylvania Constitution] because it remains an unsettled issue of state law."); King v. Ridley Twp.,2007 U.S. Dist. LEXIS 51706, at *21 (E.D. Pa. Jul 17, 2007) ("In short, the law is unsettled with respect to the availability (and scope of) damages actions for violations of the Pennsylvania Constitution. Thus, there are potentially two 'novel or complex' issues of state law the Court would need to address in deciding whether to allow Plaintiffs' claims under the Pennsylvania Constitution to proceed… This Court is not the proper forum for resolving these issues; rather, it is for the courts of the Commonwealth of Pennsylvania (and preferably the Pennsylvania Supreme Court) to decide them.").

As in the litany of cases cited above in which district courts chose, in their discretion, not to exercise supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367(c)(1), so too should this Court find that Plaintiff's proposed state law claim against the Eagles, at issue here, intentional interference with an existing at-will employment contract, is unsettled in that the issue has not yet been addressed by the Pennsylvania Supreme Court. Although the current state of Pennsylvania law at the Superior Court mandates that Plaintiff's cause of action fail, the Pennsylvania Supreme Court has never ruled on the issue and district courts have issued different opinions. Because the Pennsylvania Supreme Court is the proper jurisdiction to rule on this nebulous issue, this Court should follow the reasoning set forth in the cases cited above and choose, in its discretion, to dismiss Plaintiff's state claim so that he may properly bring it in the Pennsylvania state courts.

### C.    COUNT VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff, by his own admission, was an at will employee of NES. *See Exhibit "1" at ¶ 226.* The law in Pennsylvania clearly establishes that at-will employees can be terminated at any time "for good reason, bad reason, or no reason at all." *Holewinski v. Children's Hosp. of Pittsburgh*, 649 A.2d 712, 715 (Pa. Super. 1994). *See also Hennessy v. Santiago*, 708 A.2d 1269, 1278 (Pa. Super. 1998); *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). This means that, as an at-will employee, NES could have terminated him for any reason at all, with or without any alleged interference or conduct by the Eagles. Nevertheless, Plaintiff attempts to assert a cause of action against the Eagles for tortious interference with an existing at-will employment relationship, a cause of action that does not exist in Pennsylvania.

A cause of action does exist for intentional interference with performance of a contract. Where the tort is applicable, a plaintiff must prove four elements:

(1) the existence of a contractual relationship;
(2) an intent on the part of the defendant to harm the
    plaintiff by interfering with that contractual relationship;
(3) the absence of a privilege or justification for such interference; and
(4) damages resulting from the defendant's conduct.

*Hennessy v. Santiago*, 708 A.2d 1269, 1278 (Pa. Super. 1998) (*citing Triffin v. Janssen*, 626

A.2d 571, 574 (Pa. Super. 1993).  However, the *Hennessy* court clearly ruled that no cause of

action exists for intentional interference with an existing (as opposed to prospective)

employment relationship.

The facts at issue in Hennessy were as follows: Plaintiff-Appellant Margaret Hennessy

(hereinafter "Appellant") was employed as a habilitative counselor by Dr. Jose Santiago

(hereinafter "Dr. Santiago").  *Hennessy*, 708 A.2d at 1272.  In this role, she counseled Dr.

Santiago's patients both at his individual practice and at Alliance for Behavioral Developmental

Disability (ABDD), a corporation of which Dr. Santiago owned fifty percent.  *Id.*  ABDD

provided community living arrangements for Mercer County residents pursuant to contracts with

Mercer County Mental Health/Mental Retardation (MH/MR), and these residents received Dr.

Santiago's behavior intervention services.  *Id.*  The Assistant Mercer County Administrator,

Nancy Albert (hereinafter "Albert"), oversaw MH/MR's activities.  *Id.*  On August 12, 1995,

Appellant received a phone call from a local hospital that one of the ABDD residents had been

raped by another resident, and Appellant thereafter conducted five days of investigation prior to

taking the victim to the Mercer County D.A.'s office.  *Id.*  Appellant further contends she did so

at the encouragement of Dr. Santiago.  *Id.*  The perpetrator was arrested.  *Id.*  On August 17,

1995, Dr. Santiago told Appellant she needed to see him the next day.  *Id.*  Appellant further

learned from an undisclosed source on August 17, 1995 that Albert issued a directive ordering

Appellant off of the rape victim's case.  *Id.*  Dr. Santiago removed Appellant from all ABDD

work on August 18, 1995, and then terminated her on August 25, 1995. *Id.* Although Dr. Santiago provided Appellant six (6) reasons for her termination, she believed that Albert instructed Dr. Santiago to terminate Appellant in retaliation for assisting the rape victim. *Id.*

Appellant brought a lawsuit and, in her Second Amended Complaint, asserted three (3) claims: (1) against Dr. Santiago for wrongful discharge; (2) against Dr. Santiago, Albert and Mercer County for deprivation of civil rights under 42 U.S.C. sec. 1983; and (3) against Albert for tortious interference with Appellant's employment relationship with Dr. Santiago. *Id.* Appellant admitted that she was not a contractual employee, but argued that the Superior Court's holding in *Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611 (Pa. Super. 1980) applied to her. *Id.* at 1278. The *Yaindl* court held that "a cause of action exists where a person intentionally and improperly interferes with 'another's prospective contractual relation.' Moreover, that interference must induce or cause a third person not to enter into the prospective relationship." *Id.* (quoting *Yaindl*, 422 A.2d at 624). Appellant admitted that Albert did not interfere with a prospective contractual relationship between herself and Dr. Santiago, but relied on language from a footnote in the *Yaindl* decision, which stated: "Of course, an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." *Id.* (quoting *Yaindl*, 422 A.2d at 619).

The *Hennessy* court did not accept Appellant's argument, reasoning that, not only was the above language from the *Yaindl* case dicta and not part of the court's holding, but that Appellant proffered no cases where the doctrine of intentional interference of contract was extended to at-will employment. *Id.* The court therefore concluded: ***"[A]n action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will***

*__employment relationship.__" Id.* at 1279 (emphasis added).  The court affirmed the trial court's decision to grant Albert's preliminary objection as to Count III (intentional interference with performance of a contract) of Appellant's second amended complaint.  *Id.*

As in *Hennessy*, Plaintiff in the instant matter was an existing at-will employee at the time of the action that gives rise to this lawsuit (i.e. his termination from NES).  The Pennsylvania Superior Court clearly held in *Hennessy* that the doctrine of intentional interference with performance of a contract applies only to interference with a *__prospective__* employment relationship, not a present relationship.  *Hennessy*, 422 A.2d at 1279.  Therefore, Plaintiff fails to state a cause of action against the Eagles for intentional interference with performance of a contract since he had an existing employment relationship with NES.

The Pennsylvania Superior Court in *Haun v. Cmty. Health Sys.*, 14 A.3d 120, 125 (Pa. Super. 2011) followed the *Hennessy* holding that a cause of action for intentional interference with performance of a contract applies to interference with a prospective employment relationship only, and reversed the trial court's order denying Appellant's preliminary objections in the form of a demurrer.  A concurring and dissenting opinion authored by Judge Mundy has led to a fracture in rulings in subsequent federal court cases regarding this issue (Judge Mundy's dissent from the *Haun* opinion rests on his disagreement that the *Hennessy* holding acts as decisional law and therefore obliges the *Haun* court to decide similarly as to the issue of intentional interference with contract, *Haun*, 14 A.3d at 126).  The *Haun* Court, however, specifically addressed *Hennessy's* precedential authority in a footnote to the majority opinion:

> To the extent Appellee argues that *Hennessy* was wrongly decided, that other decisions of this Court provide more persuasive authority to allow a cause of action for intentional interference with contractual relations, or that our Supreme Court may "embrace" other legal authority if presented with this issue, we observe that we must follow the decisional law established by

our own Court. *Blumenstock v. Gibson*, 2002 811 A.2d 1029, 1039 (Pa. Super. 2002), *appeal denied*, 828 A.2d 349 (Pa. 2003). **Unless or until *Hennessy* is overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, it continues to be viable precedent for this Court and for the courts of common pleas.** *Id. See also Sorber v. American Motorists Ins. Co.*, 680 A.2d 881, 882 (Pa. Super. 1996) (holding that, even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remains binding precedent as long as the decision has not been overturned by our Supreme Court). Moreover, we note that the language alluded to by Appellee as persuasive in both *Yaindl* and *Curran v. Children's Service Center*, 578 A.2d 8, 13 (Pa. Super. 1990), is merely dicta and, therefore, these two prior decisions have no bearing on the matter presently before this Court, or on the precedential authority of the more recently decided *Hennessy*.

*Haun*, 14 A.3d at 125 (emphasis added).

The district court in *Buckwalter v. ICI Explosives USA, Inc.*, 1998 U.S. Dist. LEXIS 4369 (E.D. Pa. Mar. 25, 1998) similarly dismissed an action for intentional interference with an existing at-will employment relationship. The *Buckwalter* court found the *Hennessy* case directly supported defendant's argument that plaintiff had no claim as an at-will employee and, in light of the *Hennessy* ruling, the court dismissed plaintiff's claim. The court held that its duty was to apply state law, and that it believed that *Hennessy* "accurately predicts how the Pennsylvania Supreme Court would rule on this matter." *Id*. at *4[5]. With respect to its determination to follow the *Hennessy* decision, the district court held:

> …We believe that *Hennessy* accurately predicts how the Pennsylvania Supreme Court would rule on this matter. As the Third Circuit has explained, "in adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us… In the absence of guidance from the state's highest court, we are to consider

---

[5] *See also Carter v. Phila. Stock Exch.*, 1999 U.S. Dist. LEXIS 13660 (E.D. Pa. Aug. 25, 1999) (holding that "[a]s defendants point out, for this claim to succeed, there must have been a contractual and not simply an at-will employment relationship between plaintiff and her subsequent employers." *Id*. at *17).

> decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." *Citing Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 486 (3d Cir. 1997) (quoting *Gares v. Willingboro Township*, 90 F.3d 720, 725 (3d Cir. 1996).

It is acknowledged that certain federal court rulings have allowed a terminated at-will employee to seek redress for interference with an existing employment relationship. These cases are discussed in *Pruden v. City of Easton*, 2012 U.S. Dist. LEXIS 189748, at *30 (E.D. Pa. Sept. 4, 2012) and discussed in this Brief, *infra*. The *Pruden* court acknowledges that "federal courts in this Circuit have ruled inconsistently." *Id.* at *29-30[6]. The *Pruden* court itself reasoned that *White v. Brommer,* 747 F. Supp. 2d 447 (E.D. Pa. 2010) was the most persuasive of these cases and adopted its reasoning as to this issue. In *White,* the district court allowed a plaintiff to state a claim for, *inter alia*, intentional interference of an existing at-will employment contract, by reasoning that the Pennsylvania Supreme Court is likely to reject *Hennessy* and allow for this type of claim. *Id.* at 472. The *White* court predicted the Supreme Court would take this approach based on the following: (1) the Supreme Court has relied on the Restatement (Second) of Torts § 766; (2) Comments b. and g. to that section of the Restatement support recognition of a cause of action for an existing at-will employee; and (3) *Hennessy* allows for a cause of action for intentional interference with a prospective at-will employment relationship, and "it would be logically inconsistent to protect *prospective*, at-will employment from third-party interference but not to protect *existing*, at-will employment relationships from such interference"; and (4) other district courts have conducted similar reasoning. *Id.* (emphasis in original).

---

[6] The *Pruden* court acknowledges that the statements in *Yaindl* concerning the existence of a cause of action for interference with an at-will contract were dicta. The *Pruden* court suggests, however, that such a cause of action was addressed substantively in *Curran v. Children's Service Center of Wyoming County, Inc.*, 578 A.2d 8, 13 (Pa. Super. 1990). In truth, however, the relevant statements in *Curran* are also dicta. The statements are made in the context of a case where the court found that no cause of action existed because no third party actor existed. That the *Curran* comments are dicta has been recognized by the Pennsylvania Superior Court in *Haun*, 14 A.3d at 125.

That the Supreme Court has relied upon a section of the Restatement does not imply that the Court has adopted any Comments to the Restatement.  The Supreme Court, while having adopted section 766, "has not addressed the current issue or specifically mentioned the application of Comment g.," and even the concurring and dissenting opinion by Judge Mundy in *Haun* "concede[s] [that] our Supreme Court's adoption of Section 766 did not necessarily mandate that the *Hennessy* Court follow the precepts of Comment g." *Haun*, 14 A.3d at 127.  As such, Comments b. and g. to the Restatement (Second) of Torts § 766 are not binding and are not part of the substantive law on point.  Second, the *White* court further considered in its determination of this issue that the *Hennessy* holding was, essentially, "logically inconsistent." *Id.* at 472.  However, the *White* court recognized that "[A] United States District Court assessing state-law claims and exercising supplemental jurisdiction… [is] obligated to apply the substantive law of Pennsylvania." *Id.* at 469 (*citing Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 486 (3d Cir. 1997) (stating that "[i]n adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us…").

Notably, the *White* decision is now four years old and, as of the filing of this motion, the Pennsylvania Superior Court has yet to overturn its ruling in *Hennessy*, and the Pennsylvania Supreme Court has yet to rule on the issue.  As such, it is respectfully submitted that this Court should apply the substantive law of the Pennsylvania Superior Court and rule that there is no cause of action for intentional interference with an existing at-will employment contract.

Further, the facts in the federal court cases finding existence of a cause of action for interference with an existing relationship are wholly different than the facts pled here, and

involve direct attempts to have a plaintiff's existing employment relationship with a third party terminated. *See: White v. Brommer, supra.* (defendant police officer allegedly targeted plaintiff, arrested him on baseless charges, called plaintiff's employer and not only told him of White's arrest but advised he was unfit to perform his job and specifically requested he be fired); *Gallas v. Supreme Court*, 1998 U.S. Dist. LEXIS 14172 (E.D. Pa. August 25, 1998) (plaintiff was effectively terminated from his job by elimination of his post and demotion, and defendants were alleged to be directly responsible for loss of his job.); *Brooks v. Sys. Mfg. Corp.*, 2004 U.S. Dist. LEXIS 18396 (E.D. Pa. Sept. 9, 2004) (plaintiff's prior employer allegedly sought his termination by subsequent employers due to attempts to enforce a non-compete agreement, and engineered his firing); *McClease v. R.R. Donnelley & Sons, Co.*, 226 F. Supp. 2d 695 (E.D. Pa. 2002) (plaintiff, an African American employee of a temporary employment agency, was one of a class of workers targeted by a plant manager with racial prejudice and an openly expressed desire to eliminate African Americans from the facility, resulting in ultimate dismissal of plaintiff and many other employees).

Here, Plaintiff was a full-time employee and manager of NES. *See Exhibit "1" at ¶ 29.* His duties included "(i) orienting new hires; (ii) creating a schedule for all EMTs employed by NES; (iii) tracking EMT certifications; and (iv) processing employee payroll, as well as client bills and bidding..." *See Exhibit "1" at ¶ 32.* Additionally, he was "often required to work various venues (such as Lincoln Financial Field)" and "these hours far exceeded [his] normal forty (40) hour workweek." *See Exhibit "1" at ¶ 43.* It is evident by Plaintiff's own admission that he was a full-time employee, sometimes working overtime for night and weekend events. Clearly working at the events at Lincoln Financial Field constituted a small portion of his job. For Plaintiff to prevail on his theory of liability against the Eagles he must prove intent to

interfere with his employment relationship with NES.  The majority of Plaintiff's duties had nothing whatsoever to do with the Eagles or attendance at Lincoln Financial Field events. Plaintiff does not allege in the First Amended Complaint that the Eagles demanded or suggested that NES fire him.  Rather, the First Amended Complaint avers the Eagles merely told NES that they did not want Plaintiff at the few yearly events at Lincoln Financial Field.  Based on the averments in the First Amended Complaint, the Complaint fails to state a claim upon which relief can be granted even when considering the few federal cases where a cause of action for interference with an existing employment relationship has been found to exist.

Seemingly recognizing that he has no cause of action under Pennsylvania law for intentional interference with an existing employment relationship, Plaintiff inserts language sounding in ordinary negligence in an attempt to hold the Eagles liable for some sort of negligent conduct which Plaintiff has not pled in his one Count against the Eagles for tortious interference (*see Exhibit "1" at ¶ 250*; "As such, because Mr. Carey's termination was a foreseeable consequence of its communication with NES, the Philadelphia Eagles and/or Eagles Stadium Operator clearly intended to interfere with Mr. Carey's continued employment relationship with NES").  The case law discussed above analyzing tortious interference has no discussion of foreseeability because foreseeability has no place within the context of an intentional tort.  In these cases, foreseeability of the third party's actions was irrelevant because alleged termination was a direct request or provocation.

Plaintiff further alleges in his First Amended Complaint that the Eagles violated "public policy" set forth by the Pennsylvania Department of Health when the Eagles "sought to endanger the lives of approximately 60,000 patrons in attendance at Lincoln Financial Field on January 4, 2014." *See Exhibit "1" at ¶ 234.*  Plaintiff contends that the Eagles, by and through its agents,

"insisted that [he] and NES staff essentially kidnap and temporarily imprison seemingly 'intoxicated' patrons without their consent in order to transport those patrons to a hospital via ambulance" which would have "[v]iolat[ed] protocols issued by the Pennsylvania Department of Health [by] endanger[ing] the welfare of more than 60,000 patrons by needlessly wasting the scarce medical resources available." *See Exhibit "1" at ¶¶ 236, 238.*  Plaintiff claims that the Eagles "induced NES to terminate [his] employment because of his refusal to violate Pennsylvania law, an explicit statement of public health policy as delineated directly by the Pennsylvania Department of Health." *See Exhibit "1" at ¶ 246.*[7]

Plaintiff has not averred, nor has Defendant been able to find, any authority that supports plaintiff's apparent contention that there is a cause of action in Pennsylvania for tortious interference with an existing at-will employment relationship if termination of the at-will relationship or interference therewith is alleged to be a violation of public policy.  There is, under Pennsylvania law, an exception to the at-will employment doctrine where the discharge violates clear mandates of public policy. *Krasja v. Keypunch, Inc.*, 622 A2d 355, 360 (Pa. Super. 1992). Plaintiff appears to contend in the Amended Complaint that the public policy exception to the at will employment doctrine should also be applied to permit a claim for tortious interference, where none exists, if the interference violates public policy.  However, even in the wrongful discharge context, to survive a motion to dismiss, the Complaint alleging a wrongful discharge must establish the alleged violation of public policy. *Yetter v. Ward Trucking Corp.*, 585 A2d 1022 (Pa. Super. 1991), *appeal denied*, 600 A2d 539 (1991).  In those cases where Pennsylvania courts have recognized a violation of a clear mandate of public policy, the plaintiffs in those cases have demonstrated that a statute or constitution applied to his case and that the discharge

---

[7] Plaintiff also pleads the specious conclusion that acquiescence to the demands of "Eagles Security" would have subjected him to civil and criminal penalties for kidnapping and false imprisonment.

resulted from his duty to act in accordance with that applicable law. *Krasja, supra* at 359. The

*sine qua* non to recovery is showing there has been a "violation of a clearly mandated public

policy which strikes at the heart of a citizen's social right, duties and responsibilities."

*McGonagle v. Union Fidelity Corp.*, 556 A.2d 878, 882 (Pa. Super. 1988) *citing Paul v.*

*Lankenau Hosp.*, 543 A.2d 1148, 1155 (1988).

Here, Plaintiff alleges a violation of Department of Health protocols. A protocol does not

have the authority of law. *Rubin v. Fox*, 60 A3d 179, 186 (Pa. Cmwlth 2012). Plaintiff's

allegation of a violation of a protocol does not state a claim for tortious interference with an

existing employment relationship, even if the public policy exception to the employment at will

doctrine were applied in this context. Plaintiff's First Amended Complaint fails to state a claim

upon which the relief can be granted, under any and all analysis.

## VI.   RELIEF REQUESTED

In accordance with this Brief and Defendants' Motion to Dismiss, Defendants

Philadelphia Eagles, LLC and Eagles Stadium Operator, LLC respectfully request that this

Honorable Court grant their motion to dismiss Count VI of Plaintiff's First Amended Complaint pursuant to Federal Rule 12(b)(1) and/or pursuant to Federal Rule 12(b)(6) in the form of the proposed Orders attached.

Respectfully submitted,

**RICCI TYRRELL JOHNSON & GREY**

By: _____

John E. Tyrrell, Esquire, I.D. #56618
Francis P. Burns, III, Esquire, I.D. 27537
1515 Market Street, Suite 700
Philadelphia, PA 19102
(215) 320-3260
Attorneys for Defendants,
Philadelphia Eagles, LLC and Eagles
Stadium Operator, LLC
jtyrrell@rtjglaw.com
fburns@rtjglaw.com

**RICCI TYRRELL JOHNSON & GREY**
**By:  John E. Tyrrell / Francis P. Burns, III**
Identification No.:  56618 / 27537
1515 Market Street, Suite 700
Philadelphia, PA 19102
(215) 320-3260
Attorneys for Philadelphia Eagles, LLC
and Eagles Stadium Operator, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CAREY | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO.  2:14-cv-05006-MMB |
| NATIONAL EVENT SERVICES, INC. | : | |
| | : | |
| and | : | |
| | : | |
| PHILADELPHIA EAGLES, LLC | : | |
| | : | |
| and | : | |
| | : | |
| EAGLES STADIUM OPERATOR, LLC | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants Philadelphia Eagles, LLC and Eagles Stadium

Operator, LLC's Motion to Dismiss Count VI of Plaintiff's First Amended Complaint Pursuant

to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6) was served upon counsel by

electronic filing and regular mail on October 28, 2014.

Arthur D. Goldman, Esquire          Shawn M. Rodgers, Esquire
P.O. Box 115                        P.O. Box 552
Paoli, PA 19301                     Paoli, PA 19301

Kelly S. Sullivan, Esquire
Julian Schwegler, Esquire
1223 N. Providence Road
Media, PA  19063

RICCI TYRRELL JOHNSON & GREY

By: _____
      John E. Tyrrell, Esquire, I.D. #56618
      Francis P. Burns, III, Esquire, I.D. #27537
      1515 Market Street, Suite 700
      Philadelphia, PA  19102
      (215) 320-3260
      Attorneys for Defendants,
      Philadelphia Eagles, LLC
      and Eagles Stadium Operator, LLC
      jtyrrell@rtjglaw.com
      fburns@rtjglaw.com