**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| WILLIAM CAREY | CIVIL ACTION |
|---|---|
| v. | NO. 14-cv-05006 |
| NATIONAL EVENT SERVICES, INC., et al. | |

Baylson, J.                                                  February 13, 2015

## M E M O R A N D U M

### I.      Introduction

Plaintiff William Carey brings claims in his first Amended Complaint against his former employer, Defendant National Event Services, Inc. (NES), for failure to pay overtime (Count I) and retaliation (Count II) in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff also brings state-law claims against NES for wrongful termination (Count IV) and violations of Pennsylvania's Whistleblower Law, 43 Pa. Stat. Ann. § 1421 *et seq.* (Count III) and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1 *et seq.* (Count V), as well as a claim for tortious interference with an existing employment relationship against Defendants Philadelphia Eagles LLC and Eagles Stadium Operator, LLC (collectively, the "Eagles Defendants").

NES and the Eagles Defendants have each moved to dismiss all of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim, as well as asserted under Rule 12(b)(1) that the Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims. For the following reasons, NES's motion to dismiss is GRANTED IN PART and DENIED IN PART,

and the Eagles Defendants' motion to dismiss is DENIED.  Plaintiff will be permitted to amend his complaint to address the deficiencies raised below.

## II.   Background

### A.   FLSA Overtime and WPCL

Plaintiff alleges he was entitled to overtime under the FLSA and WPCL as a non-exempt employee.  NES, which provides medical support services at events, hired Plaintiff as a part-time emergency medical technician ("EMT") in 2007.  ECF 7, ¶¶ 26–27, 43.  In 2008, NES promoted Plaintiff to the full-time position of emergency medical services manager ("EMS Manager").  *Id.* ¶ 28.  As EMS Manager, Plaintiff was paid between $35,000 and $40,000 per year on a salary basis and received benefits.  *Id.* ¶ 30.  Plaintiff alleges that he had the following job duties:

- Orienting new hires;

- Creating the work schedule for EMTs;

- Tracking EMTs' certifications;

- Processing payroll, client bills, and billing, "subject to the authorization and/or approval" of NES's Office Manager, Eileen Stalford;

- "[C]oordinating all medical personnel" at events;

- Working as an EMT; and

- Manual and physical tasks, including maintaining ambulance inventory.

*Id.* ¶¶ 32, 40–41, 55.

In addition to these job duties, Plaintiff alleges that he adopted a new software application for staff scheduling and attempted to improve the company's safety and legal compliance efforts.  *Id.* ¶ 35.  He claims, however, that he had no authority over company policy. *Id.* ¶ 36.  Plaintiff also claims that he was not responsible for managing other employees or

apportioning work, and, other than scheduling the EMTs, had no discretionary or managerial authority except subject to Ms. Stalford's approval. *Id.* ¶¶ 37, 39. He asserts that the managerial or discretionary duties he possessed were of "minimal" importance. *Id.* ¶ 38.

As an EMS manager, Plaintiff alleges that when NES provided medical services for night and weekend events, he "frequently worked" hours that "far exceeded . . . [a] normal forty (40) hour workweek." *Id.* ¶¶ 42–43. Plaintiff claims that NES did not pay him at an increased rate for these hours, but instead "a rate that was far below [his] normal rate of compensation." *Id.* ¶¶ 44–45.

## B.     FLSA Retaliation

Plaintiff maintains that he filed a complaint about NES's failure to provide overtime pay with NES's then-Chief Operating Officer, Lori Ann Karusky, and "continued to maintain his complaints and objections" to Ms. Stalford and another EMS manager, Michael Whisler, after Ms. Karusky passed away. *Id.* ¶¶ 46–48. He alleges, however, that he feared NES would retaliate if he filed a formal complaint because he believed the company had retaliated against other employees in the past. *Id.* ¶¶ 49–50. Plaintiff also claims that other, less-qualified individuals were hired or promoted over him due to his objections to NES's overtime pay practices. *Id.* ¶ 136.

## C.     Wrongful Termination, Pennsylvania Whistleblower Law, and Tortious Interference

Plaintiff alleges that one or both of the Eagles Defendants was a "major" NES client." *Id.* ¶¶ 51–53, 98. On January 4, 2014, Plaintiff claims he was the EMS manager for a Philadelphia Eagles playoff game at Lincoln Financial Field. *Id.* ¶¶ 54. He alleges that in order to avoid responsibility for patrons' wellbeing, Eagles security personnel asked him to classify "drunk" patrons as "intoxicated" and in need of transport to a hospital. *Id.* ¶¶ 61–62. According to

Plaintiff, however, Pennsylvania Department of Health regulations and protocols define an "intoxicated" person who may be transported to a hospital without voluntary consent as having "an altered cognitive or mental state" such that they are "unable to discern the location, the time, and his or her identity." *Id.* ¶¶ 70–73.  Plaintiff asserts that as a result, security personnel's demand would require him to violate Pennsylvania health regulations as well as potentially expose him to criminal and/or civil liability for kidnapping and false imprisonment. *Id.* ¶¶ 66–67, 70–74.  Furthermore, because more than 60,000 people attended the game, at which there was a "shortage of ambulances and medical resources," expending medical resources on patrons who "properly fell under the purview of" security posed a danger to public safety. *Id.* ¶¶ 64, 77–81.

Based on his concerns about their proposed course of action, Plaintiff alleges that he told Eagles security personnel that "he lacked the authority" under Pennsylvania health regulations "to make such a broad discretionary decision regarding patient care." *Id.* ¶¶ 68–69.  Instead, the onsite physician, Dr. Kenneth Lavelle, was responsible for determining on a case-by-case basis whether patrons were sufficiently intoxicated to transport them to a hospital without voluntary consent. *Id.* ¶¶ 81–84.  Dr. Lavelle allegedly likewise refused to transport merely "drunk" patients to area hospitals, citing the same concerns as Plaintiff. *Id.* ¶¶ 77–81.  Plaintiff claims Eagles security personnel were displeased, but "the game went forward without significant incident." *Id.* ¶ 86.

Plaintiff alleges that more than two months later, on March 11, 2014, NES's Chief Operating Officer, Daniel Monzo, asked to meet with him. *Id.* ¶ 89.  Monzo allegedly told Plaintiff that "the front office" of one of the Eagles Defendants had sent an email to his brother, NES President Carl Monzo, complaining about Plaintiff's conduct at the January 4 playoff game

and instructing NES not to staff Plaintiff at future Eagles events.  *Id.* ¶¶ 90, 92–94.  Plaintiff

claims that Monzo then characterized the playoff game as a "debacle" and accused him of being

"uncooperative."  *Id.* ¶¶ 91, 96.  Plaintiff avers that Monzo then asked him to resign,

purportedly because an EMS manager must be able to attend any event or venue for which NES

provides services, and then fired Plaintiff when he refused.  *Id.* ¶ 98.

Plaintiff instituted this action on August 27, 2014.  ECF 1.  After NES and the Eagles

Defendants moved to dismiss Plaintiff's initial complaint, he amended his complaint on October

15, 2014.  ECF 3; ECF 4; ECF 7.  NES and the Eagles Defendants each move to dismiss

Plaintiff's claims under Rules 12(b)(1) and 12(b)(6).  ECF 8; ECF 12.

### III.    Jurisdiction and Legal Standard

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's FLSA claims.

The parties agree that the Court does not have jurisdiction under 28 U.S.C. § 1332 over

Plaintiff's state-law claims because their citizenship is not completely diverse.  ECF 8, at 9; ECF

12, at 4–5; ECF 14, at 15 n.4; ECF 17, at 15 n.4.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint,

the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.

2008) (internal quotation marks omitted).  To survive a 12(b)(6) motion, the complaint's "factual

allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 234.

When a complaint contains well pleaded factual allegations, "a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reaffirming rationale set forth in *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544 (2007)).  However, a court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

## IV.   Contentions of the Parties

NES argues that Plaintiff cannot sustain a FLSA overtime claim because he was an executive and/or administrative employee. ECF 12, at 6–8. Plaintiff counters that he has sufficiently alleged in his Amended Complaint that his primary job duties were nonexempt and that he lacked managerial or discretionary authority. ECF 17, at 18–24. NES further contends that Plaintiff has not set forth sufficient facts in his amended pleading establishing the causation element of his FLSA retaliation claim, which Plaintiff disputes. ECF 12, at 8–9; ECF 17, at 25–28. Both the NES and the Eagles Defendants argue that the Court must decline supplemental jurisdiction over Plaintiff's state-law claims because they do not share a common nucleus of operative fact with his federal claims. ECF 8, at 11–12; ECF 12, at 5–6; ECF 16, at 2–6. NES and the Eagles Defendants further assert that even if there is a common nucleus of operative fact between Plaintiff's claims, the Court should in its discretion decline supplemental jurisdiction because Plaintiff's state-law claims raise novel or common issues of state law.[1] ECF 8, at 14–19; ECF 12, at 5.

## V.   Analysis

### A.   FLSA Failure to Pay Overtime

As noted above, Plaintiff asserts that under the FLSA and governing regulations he was entitled to overtime pay. Defendant has made arguments that Plaintiff's allegations themselves must lead to the conclusion that Plaintiff was exempt from FLSA overtime requirements. The

Court concludes that Defendants' arguments are affirmative defenses that do not prevent Plaintiff's claims from proceeding to discovery.

The FLSA requires employers to provide "covered, nonexempt employees . . . overtime premium pay for all hours worked over forty hours in a workweek." *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556–57 (3d Cir. 2006). 29 U.S.C. § 213(a)(1) lists, *inter alia*, workers "employed in a bona fide executive, administrative, or professional capacity" as exempt from entitlement to overtime pay. According to regulations issued by the Department of Labor ("DOL"), whether an employee falls within a § 213(a)(1) exemption is not to be determined solely based on job title, but rather "on the basis of . . . the employee's salary and duties." 29 C.F.R. § 541.2 (2014); *see also* 29 U.S.C. § 213(a)(1) (empowering the Secretary of Labor to issue regulations defining employee exemptions). Section 213(a)(1) exemptions are also "to be 'narrowly construed against the employer[],'" who bears the burden of proving an exemption applies. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

> Under DOL regulations, an "executive employee" is one who is:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[1] NES's argument that Plaintiff cannot state a WPCL claim because he was exempt from overtime requirements fail for the same reasons as its arguments for dismissal of Plaintiff's FLSA overtime claim, discussed *infra*. ECF 12, at 13.

29 C.F.R. § 541.100.  In applying this provision, "courts have generally recognized that since the requisite characteristics of executive employment are stated in the conjunctive rather than the disjunctive, it is necessary . . . that the employee be shown to meet all of the administrative requirements for such exemption."  *Davis*, 453 F.3d at 557.

> The Department of Labor defines "administrative employees" as an employee who is:
>
> (1)  Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.  Although an employee need not act in "complete absence of review" to exercise "discretion and independent judgment," he or she must have the "authority to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c).

Additionally, although neither party commented on this provision in their briefs, DOL regulations specifically define first responders, including EMTs, as non-exempt "regardless of rank or pay level" so long as their primary duty is emergency response or law enforcement.  29 C.F.R. § 541.3(b)(1).  The Third Circuit has not interpreted this provision, but both the Second and Tenth Circuits have deferred to the Secretary of Labor's interpretation that it "reaffirms the primary duty test" as applied to first responders but "changes the analysis in a subtle but significant way":  Supervising or directing the work of other employees is not a "managerial duty when . . . performed concurrently with front-line" first-responder work.  *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828–29 (10th Cir. 2012) (quoting Brief for Sec'y of Labor as Amicus Curiae at 5, *Mullins v. City of New York,* 653 F.3d 104 (2d Cir. 2011) (No. 09-3435-cv) (per curiam)).

8

Plaintiff alleges some executive duties that were performed non-concurrently with EMT work, including "training employees" and "setting . . . [their] hours of work." *Maestas*, 664 F.3d at 828–29; 29 C.F.R. § 541.102; ECF 7 ¶ 32.  Plaintiff has not, however, alleged that he had any "authority to hire or fire other employees" or that his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight."  29 C.F.R. § 541.100.  Consequently, when taking all of Plaintiff's allegations as true and viewing them in the light most favorable to him, the Court concludes that Plaintiff has sufficiently averred that his employment did not meet all four elements of the executive employment exemption.  *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 557 (3d Cir. 2006).

Plaintiff also avers to performing some administrative duties, such as human resources or accounting-related tasks like payroll and billing.  29 C.F.R. § 541.201; ECF 7 ¶ 32.  The Court must therefore determine whether it is clear from the face of the Amended Complaint that these "administrative" job duties were "primary," meaning the "principal, main, major or most important" duties Plaintiff performed.  29 C.F.R. § 541.700.  This is a fact-specific inquiry that takes into account factors including "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

Plaintiff alleges that he had no discretionary duties other than scheduling employees, that he could not act without approval from a supervisor, and that what discretionary duties he had were of "minimal" importance compared with his other responsibilities.  ECF 7 ¶¶ 38–39.  He

also claims that he "frequently" worked as an EMT as well as performed manual labor such as stocking ambulances with equipment. *Id.* ¶¶ 40–41. These allegations are sufficient, when taken as true and viewed in the light most favorable to Plaintiff, to state a FLSA overtime claim.

### B.    FLSA Retaliation

Plaintiff alleges that he complained to Ms. Karusky, NES's former Chief Operating Officer, about the company's failure to provide overtime pay. *Id.* ¶ 46. After Ms. Karusky passed away, which according to both parties' briefs occurred in 2012, Plaintiff claims that he "continued to maintain his complaints and objections" to Ms. Stalford and another EMS manager, Michael Whisler. *Id.* ¶¶ 47–48; ECF 12, at 9 n.2; ECF 17, at 27. Plaintiff asserts that because of these complaints, he was denied promotions in favor of other, less-qualified individuals, and was ultimately terminated in 2014. ECF 7 ¶ 136. He further alleges that he believed the company had retaliated against other employees in the past and was therefore afraid to file a more formal complaint about alleged FLSA violations. *Id.* ¶¶ 49–50. NES argues that Plaintiff's allegations do not include any facts connecting his complaints about overtime pay to his failure to obtain a promotion or his termination. ECF 12, at 8–9.

There are no reported Third Circuit cases on the causation element of FLSA retaliation claims. In an unreported case, however, the Third Circuit has explained that a *prima facie* case of FLSA retaliation consists of the same elements as retaliation under Title VII: "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against her, and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action." *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 939 (3d Cir. 2003) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

A plaintiff may establish a causal link between protected activity and the alleged adverse employment action in a variety of ways. "[T]emporal proximity between an employer's

knowledge of protected activity and an adverse employment action" can on its own establish causation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (quoting *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001)) (internal quotation marks omitted). The Third Circuit has explained that temporal proximity is sufficiently close when it is "unusually" or "unduly suggestive", meaning the protected activity occurred very close in time to the adverse action. *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

In the absence of a sufficiently close temporal relationship, courts will consider additional evidence of "retaliatory animus" or "intervening antagonism" during the period between the complaint and the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997) (analyzing retaliation in violation of the Americans With Disabilities Act). Plaintiff has not alleged facts suggesting retaliatory animus or a pattern of intervening antagonism after his FLSA complaints. Without allegations suggesting retaliatory animus or intervening antagonism, Plaintiff must allege that there was an "unduly suggestive" temporal proximity between his complaints and adverse employment actions in order to establish causation. *Id.* at 504.

"Although there is no bright line rule," the Third Circuit has not found any period longer than three weeks so "unduly suggestive" of retaliatory animus that it was sufficient to establish causation without other evidence. *Thomas*, 351 F.3d at 114 (holding three weeks was not unduly suggestive); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (holding two months was not suggestive of retaliation in violation of the Americans With Disabilities Act); *Pollock v. City of Phila.*, 403 F. App'x 664, 668 (3d Cir. 2010) (citing *Thomas*, 351 F.3d at 114 )

(holding six weeks was not unduly suggestive); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (holding seven days was unduly suggestive); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding two days was unduly suggestive).   In his Amended Complaint, Plaintiff alleges only that he "continued" to complain about FLSA violations "[t]hroughout his time with the company."   ECF 7 ¶¶ 47–48.  He does not specify even general time periods when NES denied him promotions or when he last complained about alleged FLSA violations.   Even when viewing Plaintiff's retaliation allegations in the light most favorable to him, the facts set forth in the Amended Complaint regarding the timing of his complaints and NES's alleged adverse employment actions are too vague to support an inference that they took place within a period of a few weeks.

The Court will therefore dismiss Plaintiff's FLSA retaliation claim without prejudice. Plaintiff will have leave to amend his complaint to include additional allegations about the timing of his complaints and subsequent adverse employment actions, or other facts suggesting retaliatory animus or intervening antagonism.

### C.      State-Law Claims

Pending the filing of an amended pleading that might correct the deficiencies in Plaintiff's FLSA retaliation claim—which the Court is satisfied shares a common nucleus of operative fact with and would be expected to be tried in the same proceeding as the state-law claims stemming from Plaintiff's termination—the Court will deny Defendants' 12(b)(1) motions to dismiss Plaintiff's state law claims.  *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001).  Likewise, the Court will deny NES's 12(b)(6) motion to dismiss Plaintiff's state-law claims pending the filing of an amended pleading.

Plaintiff's claim against the Eagles Defendants states sufficient facts to fulfill the elements of tortious interference under Pennsylvania law.  *Triffin v. Janssen*, 626 A.2d 571, 574

(1993). The Court notes the split the parties have identified among cases in the Pennsylvania Superior Court and in this district over whether a tortious interference claim is available under Pennsylvania law in the context of an existing at-will employment relationship. *Compare Curran v. Children's Serv. Ctr. of Wyo. Cnty., Inc.*, 578 A.2d 8, 13 (Pa. Super. Ct. 1990) ("A cause of action for intentional interference with a contractual relationship may be sustained even though the employment relationship is at-will."), *with Hennessy v. Santiago*, 708 A.2d 1269, 1279 (Pa. Super. 1988) ("[A]n action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship."). Nevertheless, the Court will not dismiss this claim at this stage where there is no controlling precedent from the Pennsylvania Supreme Court or Third Circuit.

## VI.    Conclusion

For the foregoing reasons, NES's motion to dismiss is GRANTED IN PART and DENIED IN PART, and the Eagles Defendants' motion to dismiss is DENIED. Plaintiff is granted leave to file an amended complaint that addresses the deficiencies enumerated in this opinion. An appropriate order follows.

O:\CIVIL 14\14-5006 carey v. nat'l event\14cv5006 Memorandum re Motions to Dismiss.doc